1  Jack Silver, Esq. SBN 160575
   Jerry Bernhaut, Esq. SBN 206264
2  Law Office of Jack Silver
   Post Office Box 5469
3  Santa Rosa, CA 95402-5469
   Tel.   (707) 528-8175
4  Fax.   (707) 528-8675
   lhm28843@sbcglobal.net
5
   Attorneys for Plaintiff
6  NORTHERN CALIFORNIA RIVER WATCH

7

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11  NORTHERN CALIFORNIA RIVER            CASE NO. CV 08 0779
    WATCH, a non-profit corporation,
12                                       COMPLAINT FOR INJUNCTIVE RELIEF,
13          Plaintiff,                   CIVIL PENALTIES, RESTITUTION AND
                                         REMEDIATION
       v.                                (Environmental -
14                                       Clean Water Act -33 U.S.C. §1251 et seq.;
    PACIFIC GAS & ELECTRIC COMPANY;      RCRA - 42 U.S.C. 6901 et seq.)
15  UPWAY PROPERTIES LLC; THE 137
    SANTA ROSA GROUP PARTNERSHIP;
16  DOES 1-10, Inclusive,

17          Defendants
                                    /
18

19         COMES NOW Plaintiff, NORTHERN CALIFORNIA RIVER WATCH (hereafter,

20  "PLAINTIFF") by and through its attorneys, and for its COMPLAINT against Defendants,

21  PACIFIC GAS & ELECTRIC COMPANY; UPWAY PROPERTIES LLC; THE 137 SANTA

22  ROSA GROUP PARTNERSHIP; DOES 1-10, Inclusive, (hereafter, "DEFENDANTS"), states

23  as follows:

24                          I. **NATURE OF THE CASE**

25  1.     This is a citizens' suit for relief brought by PLAINTIFF under the Federal Water

26  Pollution Control Act, also known as the Clean Water Act (hereafter, "CWA"), 33 U.S.C. §1251

27  et seq., specifically Section 505, 33 U.S.C. §1365, 33 U.S.C. § 1311, 33 U.S.C. § 1342, to stop

28  DEFENDANTS from repeated and ongoing violations of the CWA.  These violations are

COMPLAINT FOR INJUNCTIVE RELIEF                                    1

1  detailed in the Notice of Violations and Intent to File Suit made part of the pleadings of this case

2  and attached hereto as EXHIBIT A (hereafter, "CWA NOTICE").

3  2.      This is a also a citizens' suit brought against DEFENDANTS under the citizen suit

4  enforcement provisions of the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et

5  seq., (hereafter, "RCRA"), specifically Sections 7002(a)(1)(A), 42 U.S.C.§ 6972(a)(1)(A) and

6  7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B),  to stop DEFENDANTS from repeated and ongoing

7  violations of the RCRA. These violations are detailed in the Notice of Violations and Intent to

8  File Suit made part of the pleadings of this case and attached hereto as EXHIBIT B (hereafter,

9  " RCRA NOTICE").

10  3.      DEFENDANTS are routinely violating the CWA's prohibition against discharging a

11  pollutant from a point source to waters of the United States without a NPDES permit, CWA §

12  301(a), 33 U.S.C.  1311(a), in the course of their ownership and control of the former Pacific

13  Gas & Electric Company Gas Manufacturing Plant located at First and B Streets in Santa Rosa,

14  California ( the "Site"), as described in detail in the attached CWA NOTICE. Residues of oily

15  tars and lampblack have resulted in the presence of separate phase oil on groundwater,

16  significant levels of polynuclear aromatic hydrocarbons, diesel and oil range hydrocarbons and

17  hazardous levels of lead in soil and groundwater, which have migrated through soil and

18  groundwater to Santa Rosa Creek, a tributary to the Laguna de Santa Rosa and the Russian

19  River.

20  4.      DEFENDANTS are routinely violating the CWA's prohibition against discharging a

21  pollutant from a point source to waters of the United States without a NPDES permit by

22  permitting the above named pollutants to persist in soil and groundwater at the Site , by failing

23  to comply with Cleanup and Abatement Orders issued by the Regional Water Quality Control

24  Board North Coast Region, and by failing to implement an adequate Corrective Action Plan to

25  remediate pollution at the Site.

26  5.      DEFENDANTS are also routinely violating the Basin Plan, EPA regulations codified in

27  the Code of Federal Regulations, and toxics standards promulgated by the State Water Resource

28  Control Board in the course of their ownership of the Site.

COMPLAINT FOR INJUNCTIVE RELIEF                                                    2

6.      Under 33 U.S.C. § 1251(e), Congress declared its goals and policies with regard to public participation in the enforcement of the CWA.  33 U.S.C. §§1251(e) provides, in pertinent part:

> *Public participation in the development, revision, and enforcement of any regulation, standard, effluent limitation, plan or program established by the Administrator or any State under this chapter shall be provided for, encouraged, and assisted by the Administrator and the States.*

7.      DEFENDANTS illegally discharge to waters which are habitat for threatened or endangered species as that term is defined by the California and the United States Environmental Protection Agency ("EPA"),

8.      DEFENDANTS' use and storage of petroleum and other pollutants at the Site, as described in detail in the attached RCRA NOTICE, regularly violates standards, regulations, conditions, requirements or prohibitions effective pursuant to the RCRA regarding storage of petroleum and like pollutants. [42 U.S.C. § 6972(a)(1)(A)].

9.      DEFENDANTS are routinely violating the RCRA's prohibition against creating an imminent and substantial endangerment to human health and the environment by their operations at the Site, as identified in the attached RCRA NOTICE, which have caused contamination of soil, groundwater and surface water.[42 U.S.C. § 6972(a)(1)(B)].

10.     Pollutants at the Site leach into groundwater from the residues of the gasification process and from former underground storage tanks which have either been removed from or abandoned at the Site without adequate measures to remove pollutants from soil and groundwater.

11.     PLAINTIFF seeks declaratory relief, injunctive relief to prohibit future violations, the imposition of civil penalties, and other relief for DEFENDANTS' violations of the CWA's prohibition of discharging a pollutant from a point source to waters of the United States without a NPDES permit, the RCRA's standards and regulations applicable to the use and storage of petroleum and other pollutants, and DEFENDANTS' violation of the RCRA's prohibition against creating an imminent and substantial endangerment to human health and the environment.

## II.  **PARTIES**

12.    PLAINTIFF, NORTHERN CALIFORNIA RIVER WATCH, is a 501(c)(3) non-profit public benefit corporation duly organized under the laws of the State of California, with headquarters and main office located at 6741 Sebastopol Avenue, Suite 140, Sebastopol, California.  PLAINTIFF is dedicated to protect, enhance and help restore the surface and subsurface waters of Northern California.  PLAINTIFF's members live in Northern California including Sonoma County where the above referenced Site and facilities under DEFENDANTS' operation and/or control are located.

13.    PLAINTIFF's members live nearby to waters affected by DEFENDANTS' illegal discharges.  PLAINTIFF's members have interests which are or may be adversely affected by DEFENDANTS' violations.   Said members use the effected waters and effected watershed areas for domestic water, recreation, sports, fishing, swimming, hiking, photography, nature walks, religious, spiritual and shamanic practices, and the like.  Furthermore, the relief sought will redress the injury in fact, likelihood of future injury and interference with the interests of said members.

14.    DEFENDANT PACIFIC GAS AND ELECTRIC COMPANY is a private corporation with administrative offices are located at One Market Street, Spear Tower, Suite 2400, San Francisco, California 94105.

15.    DEFENDANT UPWAY PROPERTIES LLC is a limited liability corporation with administrative offices located at 39134 State Street, Fremont, California 94538.

16.    DEFENDANT THE 137 SANTA ROSA GROUP PARTNERSHIP is a partnership consisting of private individuals.  Its main offices are located at 5549 Marit Drive, Santa Rosa, California 95402.

17.    DEFENDANTS DOES 1 - 10, Inclusive, respectively, are persons, partnerships, corporations and entities, who are, or were, responsible for, or in some way contributed to, the violations which are the subject of this Complaint or are, or were, responsible for the maintenance, supervision, management, operations, or insurance coverage of DEFENDANTS's Site, facilities and operations. The names, identities, capacities, and functions of DEFENDANTS

1    DOES 1 - 10, Inclusive are presently unknown to PLAINTIFF.    PLAINTIFF shall seek leave

2    of court to amend this Complaint to insert the true names of said DOES Defendants when the

3    same have been ascertained.

### III. <u>JURISDICTIONAL ALLEGATIONS</u>

5    18.    Subject matter jurisdiction is conferred upon this Court by Section 505(a)(1) of the CWA,

6    33 U.S.C. § 1365(a)(1), which states in part,

7        "any citizen may commence a civil action on his own behalf against any person
         . . . .who is alleged to be in violation of (A) an effluent standard or limitation .
8        . . . or (B) an order issued by the Administrator or a State with respect to such
         a standard or limitation."

9

10       For purposes of Section 505, "the term 'citizen' means a person or persons having an

11   interest which is or may be adversely affected."

12   19.    Subject matter jurisdiction is conferred upon this Court by RCRA Section 7002(a)(1),

13   42 U.S.C. § 6972(a)(1), which states in part,

14       "...any person may commence a civil action on his own behalf (A) against any
         person ... who is alleged to be in violation of any permit, standard, regulation,
15       condition, requirement, prohibition or order which has become effective pursuant
         to this chapter, or (B) against any person ...who has contributed or who is
16       contributing to the past or present handling, storage, treatment, transportation or
         disposal of any solid or hazardous waste which may present an imminent and
17       substantial endangerment to health or the environment."

18   20.    Members and supporters of PLAINTIFF reside in the vicinity of, derive livelihoods from,

19   own property near, and/or recreate on, in or near and/or otherwise use, enjoy and benefit from

20   the waterways and associated natural resources into which the DEFENDANTS discharges

21   pollutants, or by which their operations adversely affect those members' interests, in violation

22   of the CWA § 301(a), 33 U.S.C. § 1311(a) , RCRA § 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A)

23   and RCRA §7002 (a)(1)(B),  42 U.S.C. § 6972(a)(1)(B).  The health, economic, recreational,

24   aesthetic and environmental interests of PLAINTIFF and its members may be, have been, are

25   being, and will continue to be adversely affected by DEFENDANTS's unlawful violations.

26   PLAINTIFF contends there exists an injury in fact to its members, causation of that injury by the

27   DEFENDANTS' complained of conduct, and a likelihood that the requested relief will redress

28   that injury.

21.     Pursuant to Section 505(b)(1)(A) of the CWA, 33 U.S.C.§1365(b)(1)(A), PLAINTIFF gave notice of the CWA violations alleged in this Complaint more than sixty (60) days prior to commencement of this lawsuit, to: (a) DEFENDANTS; (b) the United States EPA, Federal and Regional, and (c) the State of California Water Resources Control Board.

22.     Pursuant to 505(c)(3) of the CWA, 33 USC § 1365(c)(3), a copy of this Complaint has been served on the United States Attorney General and the Administrator of the Federal EPA.

23.     Pursuant to 7002 (2)(A) of the RCRA, 42 U.S.C. §6972(2)(A), PLAINTIFF gave notice of the RCRA violations alleged in this Complaint more than ninety (90) days prior to the commencement of this lawsuit to: (a) DEFENDANTS, (b) the United States EPA, Federal and Regional, (c) the State of California Water Resources Control Board, and (d) the State of California Integrated Waste Management Board.

24.     Pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), venue lies in this District as the former gas manufacturing Site under DEFENDANTS' ownership and/or control, and the sites where illegal discharges occurred, which are the source of the violations complained of in this action, are located within this District.

25.     The basis for assignment of this case  to the Northern District of California, pursuant to RCRA §7002(a)&(b), 42 U.S.C. §§ 6972(a)&(b), is that DEFENDANTS' former gas manufacturing Site is located in this District. All of the sites of pollution are located in the Northern District of California as well.

## IV.  GENERAL ALLEGATIONS

26.     PLAINTIFF incorporates by reference all the foregoing, including the CWA NOTICE NOTICE and RCRA NOTICE attached to this Complaint as EXHIBITS A and B.

27.     DEFENDANTS own and/or operate  the former gas manufacturing Site, located at First and B Streets in Santa Rosa, California.  The Site  has been identified as a source of pollutants posing a threat to human health and the environment since at least 1986, when a Site assessment was conducted revealing the presence of petroleum constituents, polynuclear aromatic hydrocarbons and hazardous levels of lead.  The Site discharges pollutants into the waterways referenced below.

28.    Illegal discharges and activities complained of in this Complaint occur in the waterways named in the attached CWA NOTICE, all of which are waters of the United States, and at the Site and site locations identified in detail in the CWA NOTICE and RCRA NOTICE.

29.    The Regional Water Quality Control Board, North Coast Region, has determined that the watershed areas and affected waterways are beneficially used for drinking water, water contact recreation, non-contact water recreation, fresh water habitat, wildlife habitat, preservation of rare and endangered species, fish migration, fish spawning, industrial service supply, navigation, and sport fishing.

## V.  STATUTORY AND REGULATORY BACKGROUND

30.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a "point source" into the navigable waters of the United States, unless such discharge is in compliance with applicable effluent limitations as set by the EPA and the applicable State agency.  These limits are to be incorporated into an NPDES permit specifically for that point source.. Additional sets of regulations are set forth in the Basin Plan, California Toxics Plan, the Code of Federal Regulation and other regulations promulgated by the EPA and the State Water Resources Control Board.  Section 301(a) of the CWA prohibits discharges of pollutants or activities not authorized by, or in violation of an effluent standard or limitation or an order issued by the EPA or a State with respect to such a standard or limitation including an NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.  The Site owned and/or operated by DEFENDANTS is a  point source under the CWA.

31.    The affected waterways detailed in this Complaint and in the attached CWA NOTICE are navigable waters of the United States within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

32.    The Administrator of the EPA has authorized the Regional Water Quality Control Board to issue NPDES permits, subject to specified conditions and requirements, pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

33.    DEFENDANTS have no NPDES Permit for discharging pollutants to waters of the United States . All unauthorized point source discharges to waters of the United States are

1   illegal. The Site is itself a point source. Discharges from this point source via tributary ground

2   waters to waters of the United States, without a NPDES Permit, are illegal.

3   34.    RCRA Section 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A) permits an action against any

4   person who violates a PERMIT, STANDARD or REGULATION pursuant to RCRA.

5   DEFENDANTS have stored, handled and disposed of materials containing petroleum, lead and

6   other toxic pollutants, defined as hazardous wastes under the RCRA, in a manner which has

7   allowed these pollutants to be discharged to soil and groundwater beneath and adjacent to the

8   Site, in violation of regulations regarding the use and disposal of hazardous wastes. [RCRA

9   Section 3004 (d),  42 U.S.C. §6924(d)] .

10  35.    DEFENDANTS have violated provisions of the RCRA governing the use and operation

11  of underground storage tanks ("USTs") used for the storage of petroleum products (subchapter

12  IX, 42 U.S.C. § 6991 et seq.).  DEFENDANTS have removed and abandoned USTs on the Site

13  formerly used for the storage of petroleum without implementing required cleanup and

14  abatement measures.

15  36.    RCRA Section 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B) permits an action against any

16  person who has contributed or who is contributing to the past or present handling of any solid

17  or hazardous waste which may present an imminent and substantial endangerment to health or

18  the environment. The petroleum constituents, lead and other pollutants, identified in the attached

19  RCRA NOTICE, discharged at the Site in concentrations significantly greater than allowable

20  maximum concentration levels ("MCL") and/or Water Quality Objective ("WQO") are

21  hazardous wastes pursuant to RCRA Section 6903(5), 42 U.S.C. § 6972 (5). Pollutants from

22  these substances have leached into soil and ground water beneath and adjacent to the  Site,

23  creating an imminent and substantial endangerment to health and the environment.

24              **VI.  DEFENDANTS' VIOLATIONS**

25  37.    DEFENDANTS' point source discharges not regulated by a NPDES permit violated the

26  CWA's prohibition against discharge of pollutants from a point source without a NPDES permit.

27  The violations are established in Regional Water Quality Control Board Files for

28

COMPLAINT FOR INJUNCTIVE RELIEF                                              8

DEFENDANTS' Site  as well as in studies conducted by DEFENDANTS in compliance with orders from regulatory agencies .

38.    The enumerated violations are detailed in the CWA NOTICE, incorporated herein by reference, and below, designating the section of the CWA violated by the described activity.

39.    DEFENDANTS' discharges to soil and groundwater violated the RCRA's regulations regarding the storage and disposal of hazardous wastes. The violations are established in Regional Water Quality Control Board Files for DEFENDANTS' Site as well as in studies conducted by DEFENDANTS in compliance with orders from regulatory agencies

40.    The DEFENDANTS' discharges to soil and ground water violated the RCRA's prohibition against creating an imminent and substantial endangerment to health and the environment. The violations are established in Regional Water Quality Control Board Files for DEFENDANTS' Site as well as in studies conducted by DEFENDANTS in compliance with orders from regulatory agencies .

41.    The enumerated violations are detailed in the RCRA NOTICE, incorporated herein by reference, and below, designating the section of the RCRA violated by the described activity.

## VII.  CLAIMS FOR RELIEF

### A.  FIRST CLAIM FOR RELIEF - VIOLATION OF THE CWA

### 33 U.S.C. §  1251 et seq., 33 U.S.C. § 1342 (a) and (b),  33 U.S.C. § 1311

### Discharge of Pollutants from a Point Source Must be Regulated by a NPDES Permit

42.    PLAINTIFF realleges and incorporates by reference the allegations of Paragraphs 1 through 41 above, including Exhibit A, as though fully set forth herein.

43.    DEFENDANTS have and continue to violate the CWA as evidenced by the discharges of pollutants from a point source without a NPDES permit in violation of Section 301 of the CWA,  33 U.S.C. § 1311.

44.    The violations of DEFENDANTS are ongoing and will continue after the filing of this Complaint.  PLAINTIFF alleges herein all violations which may have occurred or will occur prior to trial, but for which data may not have been available or submitted or apparent from the face of the reports or data submitted by DEFENDANTS to the Regional Water Quality Control

1   Board or to PLAINTIFF prior to the filing of this Complaint.  PLAINTIFF will file additional

2   amended complaints if necessary to address DEFENDANTS' State and Federal violations which

3   may occur after the filing of this Complaint.  Each of DEFENDANTS' violations is a  separate

4   violation of the CWA.

5   45.    PLAINTIFF avers and believes and on such belief alleges that without the imposition of

6   appropriate civil penalties and the issuance of appropriate equitable relief, DEFENDANTS will

7   continue to violate the CWA as well as State and Federal standards with respect to the

8   enumerated discharges and releases.  PLAINTIFF avers and believes and on such belief alleges

9   that the relief requested in this Complaint will redress the injury to PLAINTIFF and its members,

10  prevent future injury, and protect the interests of PLAINTIFF and its members which are or may

11  be adversely affected by DEFENDANTS' violations of the CWA, as well as other State and

12  Federal standards.

13            **B.   SECOND CLAIM FOR RELIEF - VIOLATION OF THE RCRA**

14       **Violation of 42 U.S.C. § 6901 et seq., specifically 42 U.S.C.  § 6972(a)(1)(A)**

15  46.    PLAINTIFF realleges and incorporates by reference the allegations of Paragraphs 1

16  through 45 above, including Exhibit B, as though fully set forth herein

17  47.     RCRA Section 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A) permits an action against any

18  person who violates a PERMIT, STANDARD or REGULATION pursuant to RCRA.

19  Civil penalties may be assessed against any person or entity in violation of this section, under the

20  provisions of RCRA, 42 U.S.C. §§ 6928 (a) and (g).

21  48.    DEFENDANTS' storage and disposal of toxic levels of lead and petroleum constituents,

22  defined as hazardous wastes under the RCRA, at the Site, has caused the discharge of hazardous

23  wastes to soil and groundwater in violation of regulations regarding the use and disposal of

24  hazardous wastes. [RCRA Section 3004 (d),  42 U.S.C. §6924(d)]  and the use and operation of

25  underground storage tanks [RCRA Section 9002(a),  42 U.S.C. § 6991(a)].

26  49.     PLAINTIFF avers and believes and on such belief alleges that without the imposition of

27  appropriate civil penalties and the issuance of appropriate equitable relief, DEFENDANTS will

28  continue to violate a PERMIT, STANDARD or REGULATION pursuant to the RCRA,

1    specifically RCRA Section 3004 (d),  42 U.S.C. §6924(d), [RCRA Section 9002(a), 42 U.S.C.§

2    6991(a)].

3    50.    Continuing acts or failure to act by DEFENDANTS to address these violations will

4    irreparably harm PLAINTIFF and its members.  PLAINTIFF avers and believes and on such

5    belief alleges that the relief requested in this Complaint will redress the injury to PLAINTIFF

6    and its members, prevent future injury, and protect the interests of PLAINTIFF and its members

7    which are or may be adversely affected by DEFENDANTS' violations of the RCRA, as well as

8    other State and Federal standards.

9                    **C.    THIRD CLAIM FOR RELIEF - VIOLATION OF THE RCRA**

10             **Violation of 42 U.S.C. § 6901 et seq., specifically 42 U.S.C.  § 6972(a)(1)(B)**

11   51.    PLAINTIFF realleges and incorporates by reference the allegations of Paragraphs 1

12   through 50 above, including Exhibit B, as though fully set forth herein

13   52.    RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), provides that any person may

14   commence a civil action against any person or governmental entity including a past or present

15   generator, transporter, owner or operator of a treatment, storage or disposal facility who has

16   contributed to the past or present handling, storage, treatment, transportation, or disposal of any

17   solid or hazardous waste which may present an imminent and substantial endangerment to health

18   or to the environment.

19   53.    DEFENDANTS own the Site at which hazardous levels of lead and petroleum

20   constituents have been stored in a manner which has allowed them to leach pollutants into soil

21   and ground water beneath and adjacent to the Site.

22   54.    These pollutants, listed above, are known to be hazardous to the environment and human

23   health, and if released into the environment in sufficient quantity pose an imminent and

24   substantial risk.

25   55.     For purposes of the RCRA, lead and petroleum constituents at concentrations in excess

26   of regulatory maximum contaminant levels and water quality objectives are" hazardous wastes"

27   within the meaning of the statute.

28

1    56.    PLAINTIFF is informed and believes, and thereon alleges, that amounts of lead and

2    petroleum constituents released by DEFENDANTS at the  Site are in sufficient quantity to pose

3    an imminent and substantial risk to both the environment and human health.

4    57.    PLAINTIFF avers and believes and on such belief alleges that without the imposition of

5    appropriate civil penalties and the issuance of appropriate equitable relief, DEFENDANTS will

6    continue to violate a PERMIT, STANDARD or REGULATION pursuant to the RCRA,

7    specifically RCRA Section 3004 (d),  42 U.S.C. §6924(d), [RCRA Section 9002(a), 42 U.S.C.§

8    6991(a)].

9    58.    Continuing acts or failure to act by DEFENDANTS to address these violations will

10    irreparably harm PLAINTIFF and its members.  PLAINTIFF avers and believes and on such

11    belief alleges that the relief requested in this Complaint will redress the injury to PLAINTIFF

12    and its members, prevent future injury, and protect the interests of PLAINTIFF and its members

13    which are or may be adversely affected by DEFENDANTS' violations of the RCRA, as well as

14    other State and Federal standards.

15    ### VIII.    PRAYER FOR RELIEF

16    WHEREFORE, PLAINTIFF prays that the Court grant the following relief:

17    59.    Declare DEFENDANTS to have violated and to be in violation of the CWA;

18    60.    Issue an injunction ordering DEFENDANTS to immediately clean up and abate their

19    former gas manufacturing Site as identified in this Complaint in compliance with the CWA and

20    applicable State and Federal standards;

21    61.    Order DEFENDANTS to pay civil penalties of $27,500.00 per violation per day for their

22    violations of the CWA;

23    62.    Declare DEFENDANTS  to have violated and to be in violation of RCRA §

24    6972(a)(1)(A) for violation of a PERMIT, STANDARD or REGULATION regarding the

25    storage and disposal of hazardous wastes, specifically RCRA Section 3004 (d),   42 U.S.C.

26    §6924(d), [ RCRA Section 9002(a),  42 U.S.C. § 6991(a);

27

28

63.    Enjoin DEFENDANTS from storing and disposing of hazardous wastes at the Site identified in this Complaint in a manner which violates RCRA Section 3004 (d),  42 U.S.C. §6924(d), RCRA Section 9002(a),  42 U.S.C. § 6991(a);

64.    Order DEFENDANTS to pay civil penalties of $25,000.00 per violation per day for their violations of RCRA § 6972(a)(1)(A);

65.    Declare DEFENDANTS to have violated and to be in violation of the RCRA for discharging toxic pollutants from the Site identified in this Complaint, which pollutants are known carcinogens and reproductive toxins in sufficient quantity to pose an imminent and substantial risk to health;

66.    Enjoin DEFENDANTS from discharging toxic pollutants from the former gas manufacturing Site identified in this Complaint , which toxins pose an imminent and substantial risk to health and the environment;

67.    Order DEFENDANTS to pay PLAINTIFF's reasonable attorneys' fees and costs (including expert witness fees), as provided by 33 U.S.C. § 1365(d) and applicable California law; and,

68.    Grant such other and further relief as may be just and proper.


DATED: <u>January 31,   2008</u>

JERRY BERNHAUT
Attorney for Plaintiff
NORTHERN CALIFORNIA RIVER WATCH

COMPLAINT FOR INJUNCTIVE RELIEF                                      13

# EXHIBIT A

# Law Office of Jack Silver



P.O. Box 5469      Santa Rosa, California 95402
Phone 707-528-8175   Fax 707-528-8675
lhm28843@sbcglobal.net

**CERTIFIED MAIL --**
**RETURN RECEIPT REQUESTED**

August 10, 2007

Linda Y H Cheng
Vice President, Corporate Secretary
Registered Agent for Service of Process
PG&E Corporation
One Market, Spear Tower
Suite 2400
San Francisco, CA 94105

137 Santa Rosa Group Partnership
5549 Marit Drive
Santa Rosa, CA 95409

Paul Louie, Manager and
Registered Agent for Service of Process
Upway Properties LLC
39134 State Street
Fremont, CA 94538

*RE: Notice of Violations and Intent to File Suit Under the Clean Water Act*

Dear Managing Agent and/or Owner:

    Clean Water Act § 505(b), 33 U.S.C. § 1365(b), requires that sixty (60) days prior to the initiation of a civil action under Clean Water Act § 505(a), 33 U.S.C. §1365(a), a citizen must give notice of intent to sue to the alleged violator, the Environmental Protection Agency, and the State in which the violations occur.

Northern California River Watch ("River Watch") hereby places Pacific Gas and Electric Corporation, 137 Santa Rosa Group Partnership and Upway Properties, Inc. (hereafter collectively referred to as "Polluters") on notice that following the expiration of sixty (60) days from the date of this NOTICE, River Watch intends to bring suit in Federal District Court against Polluters for their continuing violations of "an effluent standard or limitation", permit condition or requirement and/or "an order issued by the Administrator or a State with respect to such standard or limitation" under Clean Water Act § 505(a)(1), 33 U.S.C. §1365(a)(1), the Code of Federal Regulations, and the Basin Plan, as exemplified by Polluters' illegally discharging from the site described below, without a national pollutant discharge elimination system ("NPDES") permit.

The Clean Water Act ("CWA") regulates the discharge of pollutants into navigable waters. The statute is structured in such a way that all discharge of pollutants is prohibited with the exception of several enumerated statutory exceptions. One such exception authorizes a polluter who has been issued a permit pursuant to the NPDES, to discharge designated pollutants at certain levels subject to certain conditions. The effluent discharge standards or limitations specified in a NPDES permit define the scope of the authorized exception to the 33 U.S.C. §1311(a) prohibition. Without a NPDES permit, all discharges from Polluters' site to waters of the United States are illegal.

BACKGROUND

In 1876, the Santa Rosa Gas Light Company erected a coal gas manufacturing plant at First and B Streets in Santa Rosa, California (hereafter, the "Site"). The plant was converted to an oil gas manufacturing plant in 1904. Pacific Gas & Electric Corporation ("PG&E") owned and operated the gas manufacturing plant from approximately 1905 until 1924. PG&E operated a natural gas distribution facility at the Site sometime after closure of the oil gas manufacturing plant until approximately 1969.

The primary residues from the gasification process include oily tars and lampblack, which contain polynuclear aromatic hydrocarbons ("PAHs"), some of which are human carcinogens. In 1986, PG&E conducted an assessment of the Site to evaluate environmental conditions, determine human health risks and identify appropriate management measures to mitigate potential exposure. The results revealed the presence of PAHs and hazardous waste levels of lead in shallow soils.

Regional Water Quality Control Board ("RWQCB") enforcement actions began on July 31, 1987, with the issuance of Cleanup and Abatement Order ("CAO") No. 87-112 to PG&E. CAO No. 87-112 contained directives to submit a plan to determine the extent of contamination at the Site, provide regular updates, and submit a plan to cleanup and abate the effects of the contamination. PG&E did not conduct the tasks required by this CAO.

In August of 1987, the 137 Santa Rosa Group Partnership ("Partnership"), which had previously entered into an agreement to purchase the Site, drilled soil borings and collected soil samples confirming the presence of PAHs, and diesel and oil range hydrocarbons in soil. In November 1987, the Partnership purchased the Site including Assessor's Parcel Numbers 010-068-17 and 010-068-20. The Partnership currently includes Madeline Musco, George Lawry, Richard Colombini, Kenneth Coker and Joel DeSilva.

On January 13, 1988, CAO 87-112 was amended by CAO No. 88-11 to recognize the change in property ownership.    On April 18, 1988, CAO No. 88-63 was issued amending CAO No. 88-11.  CAO No. 88-63 was issued to PG&E and H.A. Musco, managing partner of the Partnership.

Work on the Site conducted in 1988 on behalf of the Partnership included the drilling of soil borings, the installation of groundwater-monitoring wells, and the removal of a limited amount of impacted soil and coal tar. In 1989, a previously unknown 10,000-gallon underground storage tank was discovered and closed in place. Also in 1989, the Partnership constructed a bank building on the eastern portion of the parcel.  The remainder of the Site was paved as a parking lot.

No investigative or cleanup work was conducted between 1989 and 1994. PG&E and the Partnership did not complete the work required under CAO 88-63.

The presence of gas manufacturing waste, and diesel and oil range hydrocarbons were discovered in Santa Rosa Creek in 1995 and 1996 when the City of Santa Rosa collected soil samples in preparation for the Prince Memorial Greenway Project – a creek restoration and City park project.

The Partnership resumed groundwater monitoring at the Site in 1995 and found separate phase hydrocarbons (product) in groundwater, characterized as Bunker C oil.

On December 19, 1996, CAO No. 96-102 was issued reflecting the death of H. A. Musco. The amended CAO required the dischargers to define the extent of onsite and offsite contamination, submit a remedial action plan and submit monthly reports. The Partnership drilled soil borings in the southern portion of the Site  adjacent to Santa Rosa Creek and found significant contamination including separate phase oil. Additional work to define the extent of contamination was proposed and approved by staff.   PG&E and the Partnership did not complete the work required by the CAO.

The record indicates that APN 10-068-17 was converted to APN 010-068-21 and APN 010-068-22. A specific date for this action is not included in the record. In May 1997, Upway Properties LLC, purchased that portion of the Site identified as APN 010-068-021

Notice of Violations and Intent to File Suit - Clean Water Act - Page 3

while the Partnership retained ownership of APN 010-068-022. The Partnership notified RWQCB staff as to the change in Site ownership on January 17, 2002.

Based on information contained in the record assembled by the RWQCB, including evidence of past discharges at the Site, and current Site ownership and control, PG&E, the Partnership, Madeline L. Musco, George Lawry, Richard Colombini, Kenneth Coker, Joel DeSilva and Upway Properties LLC are collectively referred to as the Dischargers.

On April 12, 2001, a document identified as a Corrective Action Plan was submitted on behalf of the Partnership. However, the Plan contained a proposal to conduct work only on APN 010-068-022 and coordinate the work with the City of Santa Rosa Prince Memorial Greenway Project. The coordination of work with the City was acceptable, but the Plan was not acceptable because it did not propose onsite corrective action and did not meet the requirements of California Code of Regulations Title 23, Section 2725.

The City of Santa Rosa removed the north concrete wall of Santa Rosa Creek during construction of the Prince Memorial Greenway Project. This action revealed the presence of lampblack extending east near the Santa Rosa Avenue Bridge and west beyond the current Site property line. Elevated levels of diesel and motor oil range hydrocarbons, PAHs and lead were detected in soil samples. City of Santa Rosa staff reported separate phase oil in groundwater at the base of the Santa Rosa Creek during the drilling of retaining wall footings.

The analytical results of samples collected on behalf of the Partnership from the exposed north bank of Santa Rosa Creek were consistent with the City of Santa Rosa's findings. The results in parts per million (ppm) included total petroleum hydrocarbons / diesel at up to 5,800 ppm, motor oil at up to 9,100 ppm, total oil & grease at up to 2,400 ppm and lead at up to 2,100 ppm. Lead concentrations in some of the samples exceeded the Total Threshold Limit Concentration of 1,000 ppm for hazardous waste characterization. PAHs were also detected.

On September 30, 2002, City of Santa Rosa representatives removed portions of the concrete creek floor and conducted soil and water sampling west of Santa Rosa Avenue to evaluate future Prince Memorial Greenway Project design features. Petroleum hydrocarbon and polynuclear aromatic odors were noted in the water beneath the concrete creek floor adjacent to the Site. RWQCB staff collected water samples. The analytical results of those samples revealed the presence of PAHs including naphthalene at up to 380 parts per billion.

On December 18, 2002, CAO No. R1-2002-0115 was issued directing the Dischargers to define the extent of contamination, investigate potential sources of contamination and submit a Corrective Action Plan.

On June 4, 2003, the RWQCB Executive Officer issued Administrative Civil Liability Complaint No. R1-2003-0072 for violations of CAO No. R1-2002-0015, Task D (failure to complete plume definition work by February 2, 2003), Task E (failure to submit a report containing an adequate work plan to define the extent of contamination by March 6, 2003) and Task G (failure to submit a work plan to investigate additional sources of contamination by February 18, 2003).

On May 20, 2004, the RWQCB Executive Officer required the Dischargers to submit a Corrective Action Plan, as required by CAO No. R1-2002-0115, Task J, within 45-days of May 20, 2004, or by July 6, 2004. The CAP was not submitted on or before July 6, 2004.

On July 15, 2004, the RWQCB Executive Officer notified the Dischargers that they were in violation of CAO No. R1-2004-0115, Task J and that an acceptable Corrective Action Plan was now due. On August 8, 2004, a Corrective Action Plan was submitted on behalf of the Partnership. On September 9, 2004, PG&E submitted comments regarding the Plan indicating that PG&E did not support the analysis and conclusions of the Corrective Action Plan.

On October 5, 2004, the RWQCB held a public hearing regarding the Dischargers' violations of Tasks D, E and G of CAO No. R1-2002-0115 and adopted Administrative Civil Liability Order No. R1-2004-0033 imposing a $30,000.00 administrative civil liability for the Dischargers' violations of CAO No. R1-2002-0115.

Site conditions include the presence of separate phase oil on groundwater extending from Santa Rosa Avenue on the east to beyond the western Site boundary. Significant levels of PAHs are present in the northwest corner of the Site inside a 45-foot diameter and a 25-foot deep wooden underground storage tank. Oil impacted soil is present beneath First Street. Numerous subsurface features exist beneath the Site including two steel underground storage tanks and anomalies which may include former fuel delivery piping.

On October 15, 2004, PG&E requested a meeting to discuss the Corrective Action Plan and submitted a proposed agenda on November 30, 2004. The meeting was scheduled for January 12, 2005.

On December 24, 2004, the Dischargers were notified by letter that the proposed scope of work including the removal of the two newly discovered steel underground storage tanks, the removal of one previously abandoned-in-place steel underground storage tank, the removal of impacted soil and gas manufacturing waste including the contents of the 45-foot diameter and 25-foot deep wooden underground tank, and the installation of a funnel-and-gate system to treat groundwater and abate the discharge to Santa Rosa Creek,  was acceptable. The Corrective Action Plan needed modifications and corrections for completeness to be resubmitted within 30-days after December 24, 2004.

On January 3, 2005, the Dischargers were provided with a copy of the Draft CAO No. R1-2005-0002 to be discussed at the January 12, 2005 meeting.

At the January 12, 2005 meeting, PG&E proposed to participate in the development and submittal of a revised Corrective Action Plan. On February 4, 2005, the RWQCB Executive Officer provided the Dischargers with a written meeting summary and a 45-day period commencing on January 12, 2005, to submit comments regarding the draft CAO. The RWQCB indicated all comments would be considered; however, the main provisions of the CAO, including the requirement for source removal, the removal of product, impacted soil, gas manufacturing waste products, and underground storage tanks would not change.

CAO No. R1-2005-0002 issued on July 15, 2005. Task D ordered the submittal of an acceptable Corrective Action Plan by August 11, 2005. Task E ordered compliance with Santa Rosa Fire Department regulatory requirements including the submittal of an application to remove two underground storage tanks by August 11, 2005. Task L ordered the submittal of a list of interested party names and addresses by August 11, 2005.

A Corrective Action Plan was submitted on behalf of PG&E on August 11, 2005. The proposed remedial action consisted of removing shallow accessible soil that could be contacted by intrusive workers, removing two underground storage tanks, institutional controls together with a deed restriction, and monitored natural attenuation with monitoring conducted twice a year for two years.

In a letter dated March 23, 2006, the RWQCB notified the Dischargers that the Corrective Action Plan Addendum was unacceptable because it did not meet the requirements of Title 23, Section 2725 and because the selected scope of work would not protect and restore the beneficial uses of groundwater and surface water.

NOTICE

The CWA requires that any notice regarding an alleged violation of an effluent standard or limitation, or of an order with respect thereto, shall include sufficient information to permit the recipient to identify:

1.      **The specific standard, limitation, or order alleged to have been violated.**

To comply with this requirement River Watch has noticed Polluters of the fact that they have no NPDES permit allowing them to discharge pollutants to waters of the United States as required by CWA § 301(a), 33 U.S.C. § 1311(a) and CWA §§ 402(a) and 402(b), 33 U.S.C. § 1342(a) and 1342(b).

2.    **The activity alleged to constitute a violation.**

To comply with this requirement River Watch has set forth below narratives describing with particularity the activities leading to Polluters' violations.

3.    **The discharger responsible for the alleged violation.**

The discharger responsible for the alleged violations are the entities collectively referred to as "Polluters" throughout this NOTICE.

4.    **The location of the alleged violation.**

The location or locations of the various violations are identified in the BACKGROUND section of this NOTICE and in records either created or maintained by or for Polluters which relate to Polluters' activities.

5.    **The date or dates of violation or a reasonable range of dates during which the alleged activities occurred.**

As described in the BACKGROUND section of this NOTICE, the Site has been in continuous violation ever since the CWA was passed. However, this NOTICE only covers the statutory period of limitations to date running from July 31, 2002 through July 31, 2007. River Watch will from time to time update and supplement this NOTICE to include all violations which occur after the date of this NOTICE. The majority of the violations such as discharging pollutants to waters of the United States without a NPDES permit, failure to obtain a NPDES permit, failure to implement the requirements of the CWA, failure to meet water quality objectives, etc., are continuous, and therefore each day is a violation. River Watch believes all violations set forth in this NOTICE are continuing in nature or will likely continue after the filing of a lawsuit. Specific dates of violations are evidenced in Polluters' own records (or lack thereof) or files and records of other agencies including the RWQCB, County Health and City of Santa Rosa police and fire departments.

6.    **The full name, address, and telephone number of the person giving notice.**

The entity giving this NOTICE is Northern California River Watch, 6741 Sebastopol Avenue, Suite 140, Sebastopol, CA 95472. Telephone 707-824-4372.

River Watch is a non-profit corporation dedicated to the protection and enhancement of the waters of the State of California including all rivers, creeks, streams and groundwater in Northern California.

VIOLATIONS

Polluters have caused or permitted, cause or permit, or threaten to cause or permit waste to be discharged or deposited where it is, or probably will be, discharged into the waters of the state and creates, or threatens to create, a condition of pollution or nuisance. Continuing discharges are in violation of the CWA, Porter-Cologne Water Quality Control Act and provisions of the Water Quality Control Plan for the North Coast Region ("Basin Plan").

Beneficial uses of areal groundwater include domestic, irrigation, and industrial supply. Beneficial uses of Santa Rosa Creek, a tributary to the Laguna de Santa Rosa and the Russian River are:

a.    municipal and domestic supply
b.    agricultural supply
c.    industrial process supply
d.    groundwater recharge
e.    navigation
f.    hydropower generation
g.    water contact recreation
h.    non-contact water recreation
i.    commercial and sport fishing
j.    warm freshwater habitat
k.    cold freshwater habitat
l.    wildlife habitat
m.    migration of aquatic organisms
n.    spawning, reproduction, and/or early development.

Water quality objectives in the Basin Plan are adopted to ensure protection of the beneficial uses of water. The most stringent water quality objectives for protection of all beneficial uses are selected as the protective water quality criteria. Alternative cleanup and abatement actions must evaluate the feasibility of, at a minimum: (a) cleanup to background levels, (b) cleanup to levels attainable through application of best practicable technology, and (c) cleanup to protective water quality criteria levels.

Discharge prohibitions contained in the Basin Plan apply to this Site. State Water Resources Control Board ("SWRCB") Resolution 68-16 (Statement of Policy With Respect To Maintaining High Quality of Waters in California) applies to this Site. SWRCB 92-49 also applies to this Site and sets out the Policies and Procedures for Investigation and Cleanup and Abatement of Discharges under Section 13304 of the California Water Code.

Basin Plan Resolution 93-59 applies to this Site, which states "With respect to all underground petroleum tank cases in this Region, the Regional Water Board's highest priority will be to eliminate pollutant sources through tank removal, free product removal, and removal of contaminated soil to the extent practicable."

CWA §301(a), 33 U.S.C. §1311(a), the Environmental Protection Agency and the State of California have formally concluded that violations by Polluters as described in this NOTICE are prohibited by law. Beneficial uses of Santa Rosa Creek, the Russian River and its tributaries in the vicinity of the Site are being affected in a prohibited manner by these violations. Pursuant to CWA § 304, 33 U.S.C. §1311, the Environmental Protection Agency and the State have identified Polluters' Site as a point source, the discharges from which contribute to violations of applicable water quality standards.

From July 31, 2002 through July 31, 2007, Polluters have violated the CWA, the Basin Plan and the Code of Federal Regulation for discharging pollutants into waters of the United States without a NPDES permit.

These enumerated violations are based upon review of the RWQCB files for Polluters' Site, as well as studies conducted by Polluters in compliance with orders from regulatory agencies. In addition to all of the above violations, this NOTICE covers any and all violations evidenced by Polluters' records and monitoring data which Polluters have submitted (or failed to submit) to the RWQCB or other regulatory agencies. This NOTICE also covers any and all violations which may have occurred but for which data may not have been available or submitted or apparent from the face of the reports or data submitted by Polluters to the RWQCB or other regulatory agencies.

Pursuant to CWA § 309(d), 33 U.S.C. §1319(d), each of the above described violations of the CWA subjects the violator to a penalty of up to $32,500.00 per day per violation for violations occurring within five (5) years prior to the initiation of a citizen enforcement action. In addition to civil penalties, River Watch will seek injunctive relief preventing further violations of the CWA pursuant to CWA §§ 505(a) and 505(d), 33 U.S.C. §§1365(a) and 1365(d), and such other relief as is permitted by law. Lastly, CWA § 505(d), 33 U.S.C. §1365(d), permits prevailing parties to recover costs and fees.

The violations of Polluters as set forth in this NOTICE affect the health and enjoyment of members of River Watch who reside and recreate in the Russian River watershed. The members of River Watch use this watershed for domestic water supply, agricultural water supply, recreation, sports, fishing, swimming, shell fish harvesting, hiking, photography, nature walks and the like. Their health, use and enjoyment of this natural resource is specifically impaired by Polluters' violations of the CWA as described herein.

CONTACT INFORMATION

River Watch has retained legal counsel to represent them in this matter. All communications should be addressed to:

Jack Silver, Esquire
Law Office of Jack Silver
P.O. Box 5469
Santa Rosa, CA 95402-5469
Tel. 707-528-8175
Fax. 707-528-8675

CONCLUSION

River Watch believes this NOTICE sufficiently states grounds for filing suit. At the close of the 60-day notice period or shortly thereafter River Watch intends to file a citizen's suit under CWA § 505(a) against Polluters for violations at the Site.

During the 60-day notice period, River Watch is willing to discuss effective remedies for the violations described herein. However, if Polluters wish to pursue such discussions in the absence of litigation, it is suggested that those discussions be initiated within the next twenty (20) days so that they may be completed before the end of the 60-day notice period. River Watch does not intend to delay the filing of a lawsuit if discussions are continuing when that period ends.

Sincerely,

Jack Silver

cc:
Stephen L. Johnson, Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Wayne Nastri, Regional Administrator
U.S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, California 94105-3901

Dorothy R. Rice, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812-0100

Douglas H. Bosco
Attorney / Agent for Service of Process
137 Santa Rosa Group Partnership
37 Old Courthouse Square, Suite 200
Santa Rosa, CA 95404

# EXHIBIT B

# Law Office of Jack Silver



P.O. Box 5469          Santa Rosa, California 95402
Phone  707-528-8175    Fax  707-528-8675
lhm28843@sbcglobal.net

**REGISTERED MAIL**
**RETURN RECEIPT REQUESTED**

August 10, 2007

Linda Y H Cheng
Vice President, Corporate Secretary
Registered Agent for Service of Process
PG&E Corporation
One Market, Spear Tower
Suite 2400
San Francisco, CA 94105

137 Santa Rosa Group Partnership
5549 Marit Drive
Santa Rosa, CA 95409

Paul Louie, Manager and
Registered Agent for Service of Process
Upway Properties LLC
39134 State Street
Fremont, CA 94538

**RE:**   *Notice of Violations and Intent to File Suit Under the Resource Conservation and Recovery Act*

Dear Managing Agents and/or Owners:

On behalf of Northern California River Watch ("River Watch"), I am providing statutory notification and NOTICE to P G & E Corporation, 137 Santa Rosa Group Partnership and Upway Properties LLC (hereafter collectively, "Polluters"), of continuing and ongoing violations of the Federal Resource Conservation and Recovery Act ("RCRA.") 42 U.S.C. § 6901 et seq. in conjunction with the continuing pollution at the property site described in the BACKGROUND section of this NOTICE..

Notice of Violations and Intent to File Suit - RCRA -  Page 1

River Watch hereby notifies Polluters that at the expiration of the appropriate notice periods under RCRA, River Watch intends to commence a civil action against Polluters in Federal District Court on the following grounds:

1.  Polluters' use and storage of petroleum and other pollutants at the property site identified in this NOTICE has and continues to violate permits, standards, regulations, conditions, requirements or prohibitions effective pursuant to RCRA regarding storage of petroleum and like pollutants. [42 U.S.C. § 6972(a)(1)(A)];

2.  Polluters operations at the property site identified in this NOTICE have caused contamination of soil and groundwater which presents an imminent and substantial endangerment to human health and the environment [42 U.S.C. § 6972(a)(1)(B)].

BACKGROUND

In 1876, the Santa Rosa Gas Light Company erected a coal gas manufacturing plant at First and B Streets in Santa Rosa, California (hereafter, the "Site"). The plant was converted to an oil gas manufacturing plant in 1904. Pacific Gas & Electric Corporation ("PG&E") owned and operated the gas manufacturing plant from approximately 1905 until 1924. PG&E operated a natural gas distribution facility at the Site sometime after closure of the oil gas manufacturing plant until approximately 1969.

The primary residues from the gasification process include oily tars and lampblack, which contain polynuclear aromatic hydrocarbons ("PAHs"), some of which are human carcinogens. In 1986, PG&E conducted an assessment of the Site to evaluate environmental conditions, determine human health risks and identify appropriate management measures to mitigate potential exposure. The results revealed the presence of PAHs and hazardous waste levels of lead in shallow soils.

Regional Water Quality Control Board ("RWQCB") enforcement actions began on July 31, 1987, with the issuance of Cleanup and Abatement Order ("CAO") No. 87-112 to PG&E. CAO No. 87-112 contained directives to submit a plan to determine the extent of contamination at the Site, provide regular updates, and submit a plan to cleanup and abate the effects of the contamination. PG&E did not conduct the tasks required by this CAO.

In August of 1987, the 137 Santa Rosa Group Partnership ("Partnership"), which had previously entered into an agreement to purchase the Site, drilled soil borings and collected soil samples confirming the presence of PAHs, and diesel and oil range hydrocarbons in soil. In November 1987, the Partnership purchased the Site including Assessor's Parcel Numbers 010-068-17 and 010-068-20. The Partnership currently includes Madeline Musco, George Lawry, Richard Colombini, Kenneth Coker and Joel DeSilva.

On January 13, 1988, CAO 87-112 was amended by CAO No. 88-11 to recognize the change in property ownership.    On April 18, 1988, CAO No. 88-63 was issued amending CAO No. 88-11. CAO No. 88-63 was issued to PG&E and H.A. Musco, managing partner of the Partnership.

Work on the Site conducted in 1988 on behalf of the Partnership included the drilling of soil borings, the installation of groundwater-monitoring wells, and the removal of a limited amount of impacted soil and coal tar. In 1989, a previously unknown 10,000-gallon underground storage tank was discovered and closed in place. Also in 1989, the Partnership constructed a bank building on the eastern portion of the parcel.  The remainder of the Site was paved as a parking lot.

No investigative or cleanup work was conducted between 1989 and 1994. PG&E and the Partnership did not complete the work required under CAO 88-63.

The presence of gas manufacturing waste, and diesel and oil range hydrocarbons were discovered in Santa Rosa Creek in 1995 and 1996 when the City of Santa Rosa collected soil samples in preparation for the Prince Memorial Greenway Project – a creek restoration and City park project.

The Partnership resumed groundwater monitoring at the Site in 1995 and found separate phase hydrocarbons (product) in groundwater, characterized as Bunker C oil.

On December 19, 1996, CAO No. 96-102 was issued reflecting the death of H. A. Musco. The amended CAO required the dischargers to define the extent of onsite and offsite contamination, submit a remedial action plan and submit monthly reports. The Partnership drilled soil borings in the southern portion of the Site  adjacent to Santa Rosa Creek and found significant contamination including separate phase oil. Additional work to define the extent of contamination was proposed and approved by staff.  PG&E and the Partnership did not complete the work required by the CAO.

The record indicates that APN 10-068-17 was converted to APN 010-068-21 and APN 010-068-22. A specific date for this action is not included in the record.  In May 1997, Upway Properties LLC, purchased that portion of the Site identified as APN 010-068-021 while the Partnership retained ownership of APN 010-068-022.  The Partnership notified RWQCB staff as to the change in Site ownership on January 17, 2002.

Based on information contained in the record assembled by the RWQCB, including evidence of past discharges at the Site, and current Site ownership and control,  PG&E, the Partnership, Madeline L. Musco, George Lawry, Richard Colombini, Kenneth Coker, Joel DeSilva and Upway Properties LLC are collectively referred to as the Dischargers.

On April 12, 2001, a document identified as a Corrective Action Plan was submitted on behalf of the Partnership. However, the Plan contained a proposal to conduct work only on APN 010-068-022 and coordinate the work with the City of Santa Rosa Prince Memorial Greenway Project. The coordination of work with the City was acceptable, but the Plan was not acceptable because it did not propose onsite corrective action and did not meet the requirements of California Code of Regulations Title 23, Section 2725.

The City of Santa Rosa removed the north concrete wall of Santa Rosa Creek during construction of the Prince Memorial Greenway Project. This action revealed the presence of lampblack extending east near the Santa Rosa Avenue Bridge and west beyond the current Site property line. Elevated levels of diesel and motor oil range hydrocarbons, PAHs and lead were detected in soil samples. City of Santa Rosa staff reported separate phase oil in groundwater at the base of the Santa Rosa Creek during the drilling of retaining wall footings.

The analytical results of samples collected on behalf of the Partnership from the exposed north bank of Santa Rosa Creek were consistent with the City of Santa Rosa's findings. The results in parts per million (ppm) included total petroleum hydrocarbons / diesel at up to 5,800 ppm, motor oil at up to 9,100 ppm, total oil & grease at up to 2,400 ppm and lead at up to 2,100 ppm. Lead concentrations in some of the samples exceeded the Total Threshold Limit Concentration of 1,000 ppm for hazardous waste characterization. PAHs were also detected.

On September 30, 2002, City of Santa Rosa representatives removed portions of the concrete creek floor and conducted soil and water sampling west of Santa Rosa Avenue to evaluate future Prince Memorial Greenway Project design features. Petroleum hydrocarbon and polynuclear aromatic odors were noted in the water beneath the concrete creek floor adjacent to the Site. RWQCB staff collected water samples. The analytical results of those samples revealed the presence of PAHs including naphthalene at up to 380 parts per billion.

On December 18, 2002, CAO No. R1-2002-0115 was issued directing the Dischargers to define the extent of contamination, investigate potential sources of contamination and submit a Corrective Action Plan.

On June 4, 2003, the RWQCB Executive Officer issued Administrative Civil Liability Complaint No. R1-2003-0072 for violations of CAO No. R1-2002-0015, Task D (failure to complete plume definition work by February 2, 2003), Task E (failure to submit a report containing an adequate work plan to define the extent of contamination by March 6, 2003) and Task G (failure to submit a work plan to investigate additional sources of contamination by February 18, 2003).

On May 20, 2004, the RWQCB Executive Officer required the Dischargers to submit a Corrective Action Plan, as required by CAO No. R1-2002-0115, Task J, within 45-days of May 20, 2004, or by July 6, 2004. The CAP was not submitted on or before July 6, 2004.

On July 15, 2004, the RWQCB Executive Officer notified the Dischargers that they were in violation of CAO No. R1-2004-0115, Task J and that an acceptable Corrective Action Plan was now due. On August 8, 2004, a Corrective Action Plan was submitted on behalf of the Partnership. On September 9, 2004, PG&E submitted comments regarding the Plan indicating that PG&E did not support the analysis and conclusions of the Corrective Action Plan.

On October 5, 2004, the RWQCB held a public hearing regarding the Dischargers' violations of Tasks D, E and G of CAO No. R1-2002-0115 and adopted Administrative Civil Liability Order No. R1-2004-0033 imposing a $30,000.00 administrative civil liability for the Dischargers' violations of CAO No. R1-2002-0115.

Site conditions include the presence of separate phase oil on groundwater extending from Santa Rosa Avenue on the east to beyond the western Site boundary. Significant levels of PAHs are present in the northwest corner of the Site inside a 45-foot diameter and a 25-foot deep wooden underground storage tank. Oil impacted soil is present beneath First Street. Numerous subsurface features exist beneath the Site including two steel underground storage tanks and anomalies which may include former fuel delivery piping.

On October 15, 2004, PG&E requested a meeting to discuss the Corrective Action Plan and submitted a proposed agenda on November 30, 2004. The meeting was scheduled for January 12, 2005.

On December 24, 2004, the Dischargers were notified by letter that the proposed scope of work including the removal of the two newly discovered steel underground storage tanks, the removal of one previously abandoned-in-place steel underground storage tank, the removal of impacted soil and gas manufacturing waste including the contents of the 45-foot diameter and 25-foot deep wooden underground tank, and the installation of a funnel-and-gate system to treat groundwater and abate the discharge to Santa Rosa Creek,  was acceptable. The Corrective Action Plan needed modifications and corrections for completeness to be resubmitted within 30-days after December 24, 2004.

On January 3, 2005, the Dischargers were provided with a copy of the Draft CAO No. R1-2005-0002 to be discussed at the January 12, 2005 meeting.

At the January 12, 2005 meeting, PG&E proposed to participate in the development and submittal of a revised Corrective Action Plan. On February 4, 2005, the RWQCB Executive Officer provided the Dischargers with a written meeting summary and a 45-day period commencing on January 12, 2005, to submit comments regarding the draft CAO. The

RWQCB indicated all comments would be considered; however, the main provisions of the CAO, including the requirement for source removal, the removal of product, impacted soil, gas manufacturing waste products, and underground storage tanks would not change.

CAO No. R1-2005-0002 issued on July 15, 2005. Task D ordered the submittal of an acceptable Corrective Action Plan by August 11, 2005. Task E ordered compliance with Santa Rosa Fire Department regulatory requirements including the submittal of an application to remove two underground storage tanks by August 11, 2005. Task L ordered the submittal of a list of interested party names and addresses by August 11, 2005.

A Corrective Action Plan was submitted on behalf of PG&E on August 11, 2005. The proposed remedial action consisted of removing shallow accessible soil that could be contacted by intrusive workers, removing two underground storage tanks, institutional controls together with a deed restriction, and monitored natural attenuation with monitoring conducted twice a year for two years.

In a letter dated March 23, 2006, the RWQCB notified the Dischargers that the Corrective Action Plan Addendum was unacceptable because it did not meet the requirements of Title 23, Section 2725 and because the selected scope of work would not protect and restore the beneficial uses of groundwater and surface water.

Polluters have caused or permitted, cause or permit, or threaten to cause or permit waste to be discharged or deposited where it is, or probably will be, discharged into the waters of the state and creates, or threatens to create, a condition of pollution or nuisance. Continuing discharges are in violation of the Porter-Cologne Water Quality Control Act and provisions of the Water Quality Control Plan for the North Coast Region ("Basin Plan").

Beneficial uses of areal groundwater include domestic, irrigation, and industrial supply. Beneficial uses of Santa Rosa Creek, a tributary to the Laguna de Santa Rosa and the Russian River are as follows:

a.    municipal and domestic supply
b.    agricultural supply
c.    industrial process supply
d.    groundwater recharge
e.    navigation
f.    hydropower generation
g.    water contact recreation
h.    non-contact water recreation
I.    commercial and sport fishing
j.    warm freshwater habitat
k.    cold freshwater habitat
l.    wildlife habitat

m.    migration of aquatic organisms
n.    spawning, reproduction, and/or early development.

NOTICE

The provisions of RCRA require that any notice regarding an alleged violation of an effluent standard or limitation, or of an order with respect thereto, shall include sufficient information to permit the recipient to identify:

1.    **The specific standard, limitation, or order alleged to have been violated.**

To comply with this requirement River Watch has noticed Polluters of the fact that they have no NPDES permit issued pursuant to RCRA allowing to store, handle or treat hazardous materials at the Site.

2.    **The activity alleged to constitute a violation.**

To comply with this requirement River Watch has set forth above narratives describing with particularity the activities leading to violations. The major activity is the discharging of pollutants from Polluters' Site to surface waters. These activities are detailed in this NOTICE as well as in the records of the RWQCB, local fire department and the City of Santa Rosa.

3.    **The discharger responsible for the alleged violation.**

The discharger responsible for the alleged violations are the entities collectively referred to as "Polluters" throughout this NOTICE.

4.    **The location of the alleged violation.**

The location or locations of the various violations are identified in the BACKGROUND section of this NOTICE and in records either created or maintained by or for Polluters which relate to Polluters' activities.

5.    **The date or dates of violation or a reasonable range of dates during which the alleged activities occurred.**

As described in the BACKGROUND section of this NOTICE, the Site has been in continuous violation for a number of years. However, this NOTICE only covers the statutory period of limitations to date running from July 31, 2002 through July 31, 2007. River Watch will from time to time update and supplement this NOTICE to include all violations which occur after the date of this NOTICE. The majority of the violations such as discharging pollutants to waters of the United States without a NPDES permit, failure to

obtain a NPDES permit, failure to meet water quality objectives, etc., are continuous, and therefore each day is a violation. River Watch believes all violations set forth in this NOTICE are continuing in nature or will likely continue after the filing of a lawsuit. Specific dates of violations are evidenced in Polluters' own records (or lack thereof) or files and records of other agencies including the RWQCB, County Health and City of Santa Rosa police and fire departments.

### 6.     The full name, address, and telephone number of the person giving notice.

The entity giving this NOTICE is Northern California River Watch, 6741 Sebastopol Avenue, Suite 140, Sebastopol, CA 95472. Telephone 707-824-4372.

River Watch is a non-profit corporation dedicated to the protection and enhancement of the waters of the State of California including all rivers, creeks, streams and groundwater in Northern California.

## REGULATORY STANDARDS

The California Water Code, and regulations and policies developed thereunder, require cleanup and abatement of discharges and threatened discharges of waste to the extent feasible. Cleanup and abatement activities are to provide attainment of background levels of water quality, or the highest water quality that is reasonable if background levels of water quality cannot be restored. Alternative cleanup levels greater than background concentration shall be permitted only if the discharger demonstrates that: it is not feasible to attain background levels; the alternative cleanup levels are consistent with the maximum benefit to the people of the State; alternative cleanup levels will not unreasonably affect present and anticipated beneficial uses of such water; and they will not result in water quality less than prescribed in the Basin Plan and Policies adopted by the State and Regional Water Board.

Water quality objectives in the Basin Plan are adopted to ensure protection of the beneficial uses of water. The most stringent water quality objectives for protection of all beneficial uses are selected as the protective water quality criteria. Alternative cleanup and abatement actions must evaluate the feasibility of, at a minimum: (a) cleanup to background levels, (b) cleanup to levels attainable through application of best practicable technology, and (c) cleanup to protective water quality criteria levels. Exhibit 1, attached and made part of this Order, sets out the water quality objectives for ground and surface water.

Discharge prohibitions contained in the Basin Plan apply to this Site. State Water Resources Control Board (SWRCB) Resolution 68-16 (Statement of Policy With Respect To Maintaining High Quality of Waters in California) applies to this Site. SWRCB Resolution 92-49 also applies to this Site and sets out the Policies and Procedures for Investigation and Cleanup and Abatement of Discharges under Section 13304 of the California Water Code. The RWQCB has adopted a Basin Plan which designates all surface and groundwater within

the North Coast region as capable of supporting domestic water supply. The RWQCB has adopted Maximum Contaminant Levels ("MCLs") and/or Water Quality Objectives ("WQOs") for petroleum constituents and other pollutants in surface and groundwater within the region. As discussed in this NOTICE Polluters have and are exceeding these levels and objectives at the Site.

Petroleum and petroleum constituents have been characterized as "hazardous waste" and as "solid waste" within the meaning of RCRA provisions. Accordingly, all regulatory mandates applicable to hazardous or solid waste apply to the use, storage and disposal of petroleum and petroleum constituents and products.

Basin Plan Resolution 93-59 applies to this Site, which states "With respect to all underground petroleum tank cases in this Region, the Regional Water Board's highest priority will be to eliminate pollutant sources through tank removal, free product removal, and removal of contaminated soil to the extent practicable."

## VIOLATIONS OF STANDARDS AND REGULATIONS 42 U.S.C. § 6972(a)(1)(A)

Between approximately July 31, 2002 and July 31, 2007, Polluters have caused or permitted, cause or permit, or threaten to cause or permit, petroleum contaminants, petroleum constituents and other hazardous waste to be discharged or deposited where it is, or probably will be, discharged into waters of the State and now creates, or threatens to create, conditions of pollution or nuisance. The discharges and threatened discharges of such petroleum waste are deleterious to the beneficial uses of water, and are creating and threaten to create various conditions of pollution and nuisance which will continue unless the discharges and threatened discharges are permanently abated.

Provisions of RCRA govern the use and operation of underground storage tanks ("USTs") used for storage of petroleum products (subchapter IX, 42 U.S.C. § 6991 et seq.) as well as the use and storage of other pollutants. The RCRA UST regulatory program is adopted and implemented in California under the State Underground Storage of Hazardous Substance Account Act (California Health & Safety Code § 25280 et seq.).

Past or current violations of RCRA authorize the assessment of civil penalties. The enforcement provisions of 42 U.S.C. §§ 6928(a) and 6928(g) provide for penalties when conditions of hazardous waste disposal have been alleged – as River Watch has alleged herein with respect to the Site. Accordingly, under these provisions, persons or entities violating RCRA are subject to substantial liability to the United States on a per-day basis.

Between July 31, 2002 and July 31, 2007, Polluters' use and storage of petroleum constitutions and other pollutants at the Site have allowed significant quantities of hazardous petroleum constituents to be released or discharged into soil and groundwater in violation of provisions of RCRA and California UST regulatory programs including, but not limited to,

provisions governing general operating requirements for USTs, release detection and prevention requirements, release reporting and investigation requirements, and release response and corrective action requirements.

Specifically, Polluters are responsible for the following statutory violations:

1.     Failure to prevent a release, in violation of 40 CFR §§ 280.30, 280.31 and California Health & Safety Code §§ 25292.1(a) - (c), 25292.3(a) and (b).

2.     Failure to properly detect and monitor releases, in violation of 40 CFR §§ 280.40 - 280.44 and California Health & Safety Code § 25292.

3.     Failure to properly report and keep records of the release, in violation of 40 CFR §§ 280.34, 280.50, 280.52, 280.53, 280.63(b) and California Health & Safety Code §§ 25289, 25293 and 25295(a)(1).

4.     Failure to take proper corrective action, in violation of 40 CFR §§ 280.53, 280.60 - 280.66 and California Health & Safety Code § 25295(a)(1).

IMMINENT AND SUBSTANTIAL ENDANGERMENT - 42 U.S.C. § 6972(a)(1)(B)

Between July 31, 2002 and July 31, 2007, Polluters have allowed significant quantities of hazardous petroleum constituents and other pollutants to be discharged to soil and groundwater beneath the Site and beneath adjacent properties. Contaminant levels in groundwater at the Site are significantly greater than the allowable MCL and/or WQO for the constituents. All of these pollutants are known to harm both plants and animals. In their concentration at the Site these pollutants are creating an imminent and substantial endangerment to public health and the environment.

The violations alleged in this NOTICE are knowing and intentional in that Polluters in the past have used, stored and sold petroleum products the Site which are known to contain hazardous substances. Polluters have known of the contamination at the Site for many years, and have also known that failing to promptly remediate the pollution allows the contamination to migrate through soil and groundwater at and adjacent to the Site, and to continually contaminate and re-contaminate actual and potential sources of drinking water in addition to surface waters.

Violations of RCRA of the type alleged herein are a major cause of the continuing decline in water quality and pose a continuing threat to existing and future drinking water supplies of Northern California. With every discharge, groundwater supplies are contaminated. These discharges can and must be controlled in order for the groundwater supply to be returned to a safe source of drinking water.

In addition to the violations set forth above, this NOTICE is intended to cover all violations of RCRA evidenced by information which becomes available to River Watch after the date of this NOTICE..

The violations of Polluters as set forth in this NOTICE affect the health and enjoyment of members of River Watch who reside and recreate in the affected watershed areas. Said members use the watershed for domestic water supply, agricultural water supply, recreation, sports, fishing, swimming, shellfish harvesting, hiking, photography, nature walks and the like. Their health, use and enjoyment of this natural resource are conditions specifically impaired by these violations of RCRA. In some cases the economic interests of individual River Watch members have been directly impaired by the violations of Polluters as set forth in this NOTICE.

CONTACT INFORMATION

River Watch has retained legal counsel to represent them in this matter. All communications should be addressed to:

Jack Silver, Esquire
Law Office of Jack Silver
P.O. Box 5469
Santa Rosa, CA 95402-5469
Tel. (707) 528-8175
Fax (707) 528-8675

CONCLUSION

RCRA requires that sixty (60) days prior to the initiation of an action for violation of a permit, standard, regulation, condition, requirement, prohibition or order effective under RCRA, a private party must give notice of the violation to the alleged violator, the Administrator of the U.S. Environmental Protection Agency and the State in which the violation is alleged to have occurred [42 U.S.C. § 6972(b)(1)(A)]. RCRA also requires that a private party provide ninety (90) days prior notice to the alleged violator, the Administrator of the Environmental Protection Agency and the State in which the violation is alleged to have occurred before initiating an action for an imminent and substantial endangerment to human health or the environment. [42 U.S.C. § 6972(b)(2)(A)].

River Watch believes this NOTICE sufficiently states grounds for filing suit under the statutory and regulatory provisions of RCRA as to the Site. At the close of the notice periods or shortly thereafter, River Watch intends to file a suit against Polluters under RCRA provisions for each of the violations as alleged herein, and with respect to the existing conditions at the Site.

During the 90 day notice period, however, River Watch is willing to discuss effective remedies for the violations referenced.   If Polluters wish to pursue such discussions in the absence of litigation, they are encouraged to initiate such discussions immediately so that we might be on track to resolving the issues with the Site before the end of the notice period. River Watch will not delay the filing of a lawsuit if discussions have not commenced by the time the 90-day notice period ends.

Very truly yours,

Jack Silver

cc:

Stephen L. Johnson, Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Wayne Nastri, Regional Administrator
U.S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, California 94105-3901

Dorothy R. Rice, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812-0100

Mark Leary, Executive Director
Calif. Integrated Waste Management Board
1001 "I" Street
Sacramento, CA 95814

Douglas H. Bosco
Attorney / Agent for Service of Process
137 Santa Rosa Group Partnership
37 Old Courthouse Square, Suite 200
Santa Rosa, CA 95404